Keith **GILBERT** and Iva Gilbert, Appellees,

v.

**POWDER RIVER NATURAL GAS, INC., Appellant.**

No. 86697.

Court of Appeals of Oklahoma, Division No. 2.

March 1, 1996.

Rehearing Denied April 30, 1996.

D.W. Boyd, Boyd, Irhig & Associates, Blackwell, for Appellant.

Gary D. Martin, Mitchell & DeClerck, Enid, for Appellees.

### MEMORANDUM OPINION

GARRETT, Judge:

Keith Gilbert and Iva Gilbert (Appellees or Gilbert) gave Powder River Natural Gas, Inc. (Appellant or Oil Co) an oil and gas lease dated November 10, 1990. Gilbert owned the minerals underlying the property upon which the lease was given. The lease was for a primary paid up term of one year (or until November 10, 1991). Oil Co completed a well within the primary term and sold production from it until September, 1992, when it was "shut-in". By letter dated February 15, 1995, Gilbert made demand on Oil Co that it release the oil and gas lease. Oil Co refused, and did not remove its machinery and fixtures. On April 17, 1995, Gilbert filed this action to cancel the lease. They also alleged that Oil Co's failure to remove its machinery and fixtures constituted an abandonment. Oil Co alleged the lease was valid and in force as a shut-in well and was capable of producing gas in paying quantities.

Gilbert filed a motion for summary judgment and contended the lease had expired by its own terms; and, the lease was not saved by a "cessation of production clause".[1] Gilbert attached a copy of the lease as evidentiary material and an affidavit stating the lease did not produce income. Oil Co objected and contended the well was capable of producing in paying quantities; and, it had acted prudently in seeking to market production from the well. Oil Co contended the

---

1. A cessation of production clause was contained in the lease and provided: If the lessee shall commence to drill a well or commence reworking operations on an existing well within the term of this lease or any extension thereof, or on acreage pooled therewith, the lessee shall have the right to drill such well to completion or complete reworking operations with reasonable diligence or dispatch, and if oil and gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned.

shut-in royalty clause [2] operated to keep the lease in effect. Therefore, Oil Co contended, there were factual issues in dispute and a jury trial was required. As evidentiary materials, Oil Co attached an affidavit from its president, which stated it had paid royalties to Gilbert until November 1992.

The parties stipulated to certain facts: (1) they had entered into the lease; (2) Gilbert's were owners of the minerals; (3) Oil Co claimed an interest as lessee; (4) *the lease contained the clause "annual payments of shut-in royalty shall not extend this lease for more than three years past the primary term, at which time lease will terminate";* (5) the well produced through September 1992 at which time it was shut-in. The court sustained Gilbert's motion and entered summary judgment. The court found the lease had terminated in November 1994 by its own terms and, Oil Co's right to remove its machinery had expired in February 1995. Oil Co appeals.

■ The evidentiary materials show the lease was to expire upon certain conditions and those conditions occurred. That is, the well was shut in and therefore the lease would terminate no later than three years after the primary term, even if shut in royalties were paid. The cessation of production clause *would allow the Oil Co to complete the* well or complete reworking of the well past the term of the lease, *if it had begun to do so.* There was no evidence Oil Co was reworking the lease, only that it had shut in the well due to marketing conditions. Therefore, the cessation of production clause is not applicable.

■ The lease was a printed form for a paid up lease. It contained a shut-in royalty clause. Attached was a typewritten Exhibit "A" containing fourteen paragraphs of special provisions. It is elementary that the attached special agreements supersede the printed form provisions if a conflict exists.

■The shut-in royalty clause generally provides the lease will remain in effect upon the payment of $1.00 per acre per year for an indefinite period. Under this clause, such a payment would be due in November 1992, which was made, and then again in November 1993. There was no evidence of payment. Assuming arguendo such royalties had been properly paid, the general shut-in royalty clause is superseded by the specific clause in paragraph 2 of Exhibit "A" which provided that even if such royalties were paid, the lease could not be extended for more than three years past the primary term. There were no material disputed facts. Summary judgment for Gilbert and against Oil Co was proper.

AFFIRMED.

CARL B. JONES, P.J., and JOPLIN, J., concur.

---

2. The shut-in royalty clause provides: During any period (whether before or after the primary term hereof) when gas is not being so sold or used and the well or wells are shut-in and there is no current production of oil or operations on said premises sufficient to keep this lease in force, lessee shall pay or tender a royalty of One dollar ($1.00) per year per net royalty acre retained hereunder, such payment or tender to be made, on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.